**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Randolph Chambers

     v.                                    Civil No. 07-cv-326-PB

Richard Gerry, Warden
New Hampshire State
Prison, et al.


**<u>REPORT AND RECOMMENDATION</u>**


Pro se plaintiff Randolph Chambers is before the court seeking relief from the New Hampshire State Prison's ("NHSP") alleged refusal to provide him necessary dental care.  He filed a civil rights complaint pursuant to 42 U.S.C. § 1983 and a motion for preliminary injunctive relief.  (Document nos. 1 and 8, respectively.)  A hearing on plaintiff's preliminary injunction motion was held on November 2, 2007.  For the reasons set forth below, I find plaintiff has demonstrated both a likelihood of success on the merits of his underlying civil rights claim and a substantial risk of irreparable harm, and recommend, therefore, that the preliminary injunction be granted.  In a separate order issued simultaneously herewith, I will have the complaint served to enable this action to proceed.

<u>Discussion</u>

**1.   Standard of Review**

To justify the extraordinary relief of a preliminary injunction, plaintiff bears the burden of establishing that an injunction is necessary to prevent irreparable harm and to preserve the status quo, to enable a meaningful disposition upon full adjudication of his claims.  <u>See</u> <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 18 (1st Cir. 1996) (finding irreparable harm where legal remedies are inadequate); <u>see</u> <u>also</u> <u>CMM Cable Rep. v. Ocean Coast Props.</u>, 48 F.3d 618, 620-1 (1st Cir. 1995) (enjoining certain conduct permits the court "more effectively to remedy discerned wrongs"); <u>Acierno v. New Castle County</u>, 40 F.3d 645, 653 (3rd Cir. 1994) (explaining irreparable harm and its effect the contours of preliminary injunctive relief).  To carry this burden, plaintiff must demonstrate:  "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest."  <u>Esso Standard Oil</u>

2

Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006); see also Ross-Simons of Warwick, Inc., 102 F.3d at 18-19 (explaining the burden of proof for a preliminary injunction).  If plaintiff is not able to show a likelihood of success on the merits, the remaining factors "become matters of idle curiosity," id., insufficient to carry the weight of this extraordinary relief on their own.  See Esso Standard Oil Co., 445 F.3d at 18 (the "sine qua non . . . is likelihood of success on the merits") (internal quotation omitted).  While likelihood of success is the critical factor, a preliminary injunction will not issue even if plaintiff is likely to succeed, unless plaintiff also demonstrates he will suffer irreparable harm without the requested injunctive relief.  See Ross-Simons of Warwick, Inc., 102 F.3d at 19 ("the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem").

Since plaintiff must demonstrate his likelihood of success on the merits, the preliminary issue of whether he has stated a claim upon which relief may be granted arises.  When, as is the case here, an incarcerated plaintiff commences an action pro se and in forma pauperis, the complaint is reviewed to determine whether, among other things, it states a cognizable claim for

relief.  <u>See</u> 28 U.S.C. § 1915A (requiring the court to review as soon as practicable complaints filed by prisoners against governmental entities and employees to determine whether the action may proceed); <u>see also</u> U.S. District Court for the District of New Hampshire Local Rule 4.3(d)(2).  Pro se pleadings must be construed liberally, so "that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997); <u>see also</u> <u>Ayala Serrano v. Lebron Gonzales</u>, 909 F.2d 8, 15 (1st Cir. 1990) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) to construe pro se pleadings liberally in favor of the pro se party).  All factual assertions and inferences reasonably drawn therefrom must be accepted as true.  <u>See</u> <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review).  This ensures that pro se pleadings are given fair and meaningful consideration.  <u>See</u> <u>Eveland v. Dir. of C.I.A.</u>, 843 F.2d 46, 49 (1st Cir. 1988).

## 2.  Plaintiff's Showing

Plaintiff's § 1983 complaint asserts a single claim for a violation of the Eighth Amendment, based on the NHSP's refusal to fill a cavity that was diagnosed in May 2007.  Denial of dental

care is considered a denial of medical care, which can constitute
an Eighth Amendment violation when prison authorities are
deliberately indifferent to a prisoner's serious medical needs.
See Estelle, 429 U.S. at 104 (explaining the government's
obligation to provide medical care to inmates to comply with the
proscription against "unnecessary and wanton infliction of
pain"); see also Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th
Cir. 1989) ("'Dental care is one of the most important medical
needs of inmates.'" (quoting Romas v. Lamm, 639 F.2d 559, 576
(10th Cir. 1980))).  "Accordingly, the eighth amendment requires
that prisoners be provided with a system of ready access to
adequate dental care."  Hunt, 865 F.2d at 200; see also Chance v.
Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (cognizable claim
regarding inadequate dental care can be based on various factors
including pain suffered by plaintiff); Dean v. Coughlin, 623
F.Supp. 392, 399 (S.D.N.Y. 1985) (failure to provide routine
dental care violates Eighth Amendment rights); Laaman v.
Helgemoe, 437 F.Supp. 269, 313 (D.N.H. 1977) ("Inmates are
entitled to reasonable dental care.").

Deliberate indifference is manifested by prison officials
who "intentionally deny[] or delay[] access to medical care or

intentionally interfer[e] with the treatment once prescribed."
Estelle, 429 U.S. at 104-05.  "A medical need is 'serious' if it
is one that has been diagnosed by a physician as mandating
treatment, or one that is so obvious that even a lay person would
easily recognize the necessity for a doctor's attention."
Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir.
1990).  Although a mere delay in needed dental care will not
violate the Eighth Amendment, when that delay causes or gives
rise to a substantial risk of serious harm to a prisoner, the
requisite deliberate indifference to a serious medical need is
found.  See Farrow v. West, 320 F.3d 1235, 1243-44 (11th Cir.
2003) (need for dental care combined with the effects of not
receiving it may give rise to an Eighth Amendment claim); see
also Boyd v. Knox, 47 F.3d 966, 969 (8th Cir. 1995) (delay in
dental care coupled with knowledge of patient's pain can support
Eighth Amendment claim).

     At the hearing, plaintiff testified that he went to sick
call on May 9, 2007, at which time he received a temporary
filling and was put on the waiting list for an appointment to
receive a permanent filling.  Within the hour the filling had
fallen out.  Plaintiff testified that he continues to suffer pain

from the tooth, caused either by food or cold liquids that come in contact with the cavity.  While the evidence indicated the pain has not been severe, and plaintiff showed no signs of infection, he testified that every time food or liquid touched the cavity he endured at least fifteen minutes of pain, which sometimes lasted longer and which has caused him to avoid exposing the tooth to these irritants.  Most notably, however, plaintiff amply demonstrated that the prison has known of his pain and yet has not even scheduled him for the permanent filling he has needed since at least May 2007.  See Boyd, 47 F.3d at 969 (finding delayed dental care combined with knowledge of pain supports Eighth Amendment claim).

The evidence demonstrated that plaintiff has consistently complained about his tooth, following proper prison procedures, from the initial sick call visit on May 9 until the hearing on November 2.  Plaintiff orally complained in June, and filed grievance forms, often bimonthly, about his need for a filling in June, July, August, September and October, before commencing this action.  See Pl.'s Exs. 1-6; Def.'s Exs. B-G.  Plaintiff filed his complaints with the NHSP Dental Office, NHSP Chief Dentist Karen Anderson, Warden Richard Gerry, who responded by referring

the matter to Medical Director Robert McLeod, and with
Commissioner William Wrenn.  On August 8, 2007, plaintiff was
advised:

> We now have even less staff because the dentists
> are out until October.  We have one Dr. for 3
> prisons.  We cannot possibly see everyone and we
> still can't put you ahead of others who have been
> waiting since November.  You will need to wait
> your turn and we will see you when we can.  It
> will be **at least** 8 months.  (looking at your charts
> you have had 3 fillings/3 appointments in the last
> 8 months – you have been seen a lot more than most
> people)

Pl.'s Ex. 3 (emphasis in original).  After continued persistence,
plaintiff managed to get on the "short notice call list," which
enables an inmate to be seen if someone cancels or an appointment
suddenly becomes available.  See Pl.'s Ex. 5.  Despite his "short
list" status, plaintiff's tooth remains untreated.

Dr. Anderson explained that prison policy required that
inmate dental care be evaluated and prioritized based on the
severity of the problem, so that emergencies could be attended to
immediately, and routine dental care would be taken care of on a
first come, first serve basis, as time allowed.  She testified
that plaintiff's condition was not urgent, as he exhibited no
signs of swelling, fever, or his condition otherwise worsening.
She also explained that plaintiff could have come to sick call

again and have waited to be seen; however, plaintiff declined
that option.[1]  She stated that because of a contract dispute, she
was the sole dentist for the prison in July, August and September
2007.  For understandable and obvious reasons, the work
presumably accumulated faster than she could attend to it.  She
concluded her testimony by opining that, while plaintiff's need
was not urgent, the protracted delay in getting his cavity filled
was not consistent with good dental care and fell below the
ordinary standard of care.

I find this evidence demonstrates a deliberate indifference
on the part of the New Hampshire Department of Corrections
("NHDOC") to take care of the dental needs of its inmates.  The
undisputed evidence showed that just one dentist, Dr. Anderson,
was responsible for all the inmates in the entire state prison
system for at least July, August and September 2007.  There was
no evidence that during that time period the NHSP made other
arrangements to obtain the requisite dental care for inmates, by
outsourcing the work or otherwise.  Instead, the official
response was simply to wait, unless an emergency was occurring.

---

[1]The evidence showed that inmates pay $3.00 for a sick call
visit, but are not denied care if they do not have available
funds.

9

Based on common experience, which was substantiated by Dr. Anderson's professional opinion, waiting nearly a year, or longer, to have a cavity filled is substandard care.  While plaintiff may not have an emergent need today, the extended delay in providing him dental care creates a substantial risk of a serious medical need arising.

Whatever financial or policy considerations may have affected the NHDOC's negotiations with its dentists is not an excuse for its complete failure to provide routine dental care. Based on the evidence before me, I find plaintiff repeatedly informed defendants of his pain, which they consistently dismissed, apparently because of lack of resources.  I readily find defendants have failed to provide plaintiff with "a system of ready access to adequate dental care," Hunt, 865 F.2d at 200, in violation of the Eighth Amendment.  See Laaman, 437 F. Supp at 312 (finding prisoners "need not await the inevitable harm" caused by staff shortages, which "render medical services below constitutional muster" when the lack of coverage endangers the health of the inmate population).

### 3.  Defendants' Liability

In this § 1983 action, plaintiff seeks both injunctive and

10

monetary relief, and has named the following individuals as defendants: Dr. John Doe, Dr. Anderson, Director McCleod, Warden Gerry and Commissioner Wrenn.[2]  Plaintiff alleges Dr. John Doe saw him at the May 9, 2007, sick call and placed a temporary filling in his cavity.  Since plaintiff makes no other allegation pertaining to the care received by Dr. John Doe, he has failed to state an actionable § 1983 claim against Dr. John Doe, and I recommend that he be dismissed from this action.  Plaintiff has, however, alleged sufficient facts to state claims against the remaining defendants.

Plaintiff has not specified whether defendants Anderson, McLeod, Gerry and Wrenn are being sued in their official or individual capacities.  Liberally construing the complaint in plaintiff's favor, as I am required to do at this preliminary stage of review, because he seeks both injunctive and monetary relief, I find he intends to bring this action against the defendants in both their official and individual capacities.

_____

[2]Plaintiff also named the "Medical Department 'Dental'" as a defendant.  The claims against Anderson, the Chief Dentist at the NHSP, and McLeod, the Medical Director of the NHSP, subsume any claim plaintiff asserts against the Medical Department.  See Monell v. NYC Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978) (official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent").

Since each defendant works for the NHDOC, a suit against them in their official capacities is a suit against the NHDOC, which cannot be held liable for money damages under § 1983 because of the immunity afforded state agencies under the Eleventh Amendment.  See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a state nor its agencies may be subject to suit in federal court); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that neither a state nor its officials acting in their official capacities are "persons" under § 1983).  Yet, to obtain the prospective injunctive relief plaintiff seeks here, he must bring this action against defendants in their official capacities.  See id. at 71 n.10; see also Brandon v. Holt, 469 U.S. 464, 471–72 (1985)(suing an officer in his or her official capacity is another way of suing the public entity that the official represents); Ex Parte Young, 209 U.S. 123, 159–60 (1908).

On the other hand, in order to obtain the monetary relief plaintiff seeks, he must pursue his claims against defendants in their individual capacities.  Each defendant named here serves a supervisory function within the NHDOC.  Although there is no supervisory liability in § 1983 actions based on a *respondeat*

*superior* theory of liability, see Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); City of Canton v. Harris, 489 U.S. 378, 385 (1989), a defendant supervisor can held liable based on the defendant's actual notice of facts sufficient to render the official responsible for reasonable inquiry into the complaint. See Feliciano v. DuBois, 846 F. Supp. 1033, 1045 (D.Mass. 1994) (citing Layne v. Vinzant, 657 F.2d 468 (1st Cir. 1981)). A supervisor also may be held liable for his own acts, or omissions, if they rise to the level of reckless or callous indifference to the constitutional rights of others. See Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91–92 (1st Cir. 1994). Finally, a supervisor may be held liable under § 1983 if he or she "formulates a policy or engages in a practice that leads to a civil rights violation committed by another." Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998).

Based on the current record, defendants Anderson, McLeod, Gerry and Wrenn each knew of plaintiff's pain and need for a filling, and nevertheless failed to take any steps to ensure the requisite care would be provided within a time period even approaching the standard of ordinary care. These allegations state the minimal facts necessary to allow plaintiff's Eighth

Amendment claim to proceed against defendants Anderson, McLeod, Gerry and Wrenn.  Accordingly, plaintiff's § 1983 action may proceed against defendants Anderson, McLeod, Gerry and Wrenn in both their official and individual capacities.  In an order issued simultaneously herewith, I will order the clerk's office to serve the complaint on these defendants.

<u>Conclusion</u>

As explained fully above, I recommend that plaintiff's motion for a preliminary injunction (document no. 8) be granted. I recommend that defendants be ordered to provide plaintiff with the dental care needed to properly fix his cavity within 30 days of the date of this Report and Recommendation.  I also recommend that defendants Dr. John Doe and "Medical Department 'Dental'" be dismissed from this action.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13–14 (1st Cir. 1992);

14

<u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).


_____
James R. Muirhead
United States Magistrate Judge


Date:  November 9, 2007


cc:  Laura E.B. Lombardi, Esq.
     Randolph Chambers, pro se